There we are. Okay. First argued case this morning is number 171286 Brown against Wilkie. Mr. Carpenter. The Veterans Corp relied upon a misinterpretation of provisions of 38 CFR 3.156 C when it concluded that Mr. Brown was not prejudiced by the failure of the VA to apply this regulation. Mr. Brown was prejudiced by the VA's failure to afford him the benefit of the regulatory required reconstruction under this regulation. Section 3.156 C is Mr. Carpenter. Why does it matter if Q wasn't met if there wouldn't have been clearly a different result? Well, there clearly would have been a different result, your honor. There would have been the reconsideration that was required under 3.156 C. And that is where in the misinterpretation lies in this case. The Veterans Court misread, misunderstood the requirements of 3.156 C as being separate and distinguishable from the requirements of either a confirmed decision or a reopening decision. It still needs NME, doesn't it? New and material evidence? No, it does not. And that's the difference. The difference is, is that under 3.156 C what is required is service department records that were not associated with the claims file at the time of the original decision, in this case in 1974. When the secretary amended this regulation, he amended it with the express intention of clarifying the meaning and stated quite clearly that the meaning after the amendment is the same as the meaning prior to the amendment. And that meaning was that this regulation was designed to be a remedial regulation to afford the veteran the benefit of a reconsideration of his or her original claim. That is a different process, a different proceeding than the proceeding that took place in 1974 or the proceeding that took place in 2002. What took place in 2002 was a traditional reopening under 3.156 A. This court in Blubaugh recognized that 3.156 C provides an exception to 3.156 A. And that exception is a substantive right. There is no statutory predicate to this regulation. This regulation was the creation of the secretary. It has been on the books since at least 1960. And in 1974, excuse me, 1978, when the VA received service department records that it had not previously been received, it was required to go back and redo the claim that was made by Mr. Brown in 1974. That has never happened in this case. He has a regulatory right to that, and he is prejudiced when that right is not provided. In the context of Q, it is also a manifestly different outcome if the veteran is entitled to a substantive right and does not receive that substantive right. What is required in the revision of the 2002 decision is a direction that the VA Is there a fact question here? The court said even assuming that the board misinterpreted the law, the court agrees with the secretary that the appellant has not alleged with specificity that any error manifestly changed the outcome of the 2002 decision. And that is simply an incorrect characterization of Mr. Brown's allegation of error. Does it relate to an application of law? No, because it is not an application of law. In fact, it is a question of regulatory interpretation. The underpinning of that conclusion by both the secretary and the veterans court is premised upon a misunderstanding, a misreading of what is required by 3.156C. What is required by 3.156C is a mandatory, not permissive, reconsideration. The failure to provide that reconsideration is the resulting manifestly different outcome because what needs to be ordered in the revision based upon the clear and unmistakable error, the failure to consider and correctly apply this regulation, is to afford Mr. Brown the reconsideration. Didn't the board in 1978 consider the morning sick reports that we're talking about? I don't believe the board did. The VA did in a confirmed rating decision. They did consider them? They did consider them. But they did not reconsider Mr. Brown's original claim in 1974, which is what is required by, which is the exception that is recognized by this court in Blubach. That is a different administrative adjudicative proceeding under the authority of this regulation than to simply acknowledge the receipt of those and then issue a confirming decision. More is required under 3.156C, as the secretary described in his published interpretation of 3.156C, is to ensure that the harm done to the veteran by the VA's failure in its duty to assist to get relevant service department records is given the opportunity for a new adjudication. He was not given a new adjudication. I cannot dispute that the VA acknowledged receipt of those, but the trigger under 3.156C is upon receipt, the secretary is required to reconsider. That is not what happened in 1974, and that's not what happened in 2002. This court must recognize that the remedial right that is afforded under 3.156C is a substantive right, and if that substantive right is ignored, as it was in this case on the two opportunities that the VA had to look at this matter in 1978 and again in 2002, that was both a clear and unmistakable error, and required the revision of the 2002 decision so that the reconsideration that is mandated by 3.156C would be afforded to Mr. Brown. You brought up our case in Blue Boat. Why is that controlling toward an affirm in this case? For a couple of reasons, Your Honor. First, the Blue Boat case dealt with a slightly different issue than is dealt with in this case, and what is dealt with in this case is a question of how 3.156C operates. What was contemplated by the secretary when he wrote that regulation? When he amended the regulation, the secretary made very clear what the purpose and function of 3.156C was. That function was not carried out in this case, either in 1978 or in 2002. What was carried out in 2002 was a reopening under 3.156A, not a reconsideration under 3.156C. As a result, they assigned the effective date as of the date of the receipt of new and material evidence. They didn't reconsider the original claim in 1974. This is clearly described by the secretary as the claimant should not be harmed by an administrative deficiency of the government. The administrative deficiency of the government was in the failure to get these service department records that were available and ultimately relied upon by the VA when they made the grant. But what's required under 3.156C is that at any time the VA receives service department records that were not part of the record at the time of the original adjudication, there must be a reconsideration of the original claim. That requires an exception to the finality of the board's decision in 1974, which was a direct appeal of the original denial in 1974, and it is an exception to the finality of the subsequent intervening decisions because 3.156C mandates a specific procedure, i.e. a reconsideration. Why does it mandate? Doesn't it use the word may consider other evidence only when it's new and material? What the regulation said both before and after is will. It says affirmatively will be reconsidered in both the prior version of 3.156C and clearly in 3.156C1 says that upon receipt of service department records, not previously, it shall be reconsidered, the original claim. So there is no ambiguity in that original language or in the amended language. I see that I'm about to go into my rebuttal time unless there's further questions. Thank you, Mr. Carpenter. Mr. Lyons. May it please the court. Mr. Brown cannot present cue here because he relies on a definition of new and material that is neither new nor material. And because he doesn't show how his interpretation would manifestly change the outcome below where he has to show that his alleged new evidence would clearly support relation back to the first date. Your Honor, you asked if there are factual issues here. We think that as you raised on your in the original argument, there's a factual question there. There's also a factual question as to the materiality prong here where the Veterans Court said it is found it is undisputed that these sick reports were not the basis of reopening. We think that's also a factual question, which would not properly be before the court. Well, you know what seems to be unusual about this case? The original records were destroyed by fire. The position throughout is that that's not the government's fault. No presumptions in favor of the veteran or whatever else. Finally, evidence that apparently was available all along turns up. And your position is that's too bad. No, Your Honor. The evidence that shows up that's important, that's material, is that Mr. Brown found his private doctor who said who gave him a declaration saying, I recall treating you for this, not in service, but shortly after. And then a second current doctor who did some sort of radiological testing and found that there's no evidence that disproves his claim. But there was, until the evidence that he had been sick, it looked as if he wasn't able even to get to that stage. No, it was never disputed, Your Honor. No one has asserted that he didn't prove service connection because he was never sick. The question was whether he had this gastric condition while he was in service. And that's why when he presented these daily sick call reports that say, yes, you were out sick, they don't say why. He didn't present them. The government eventually found them extremely tardily after all the decisions had been made against him. But on his second request for reopening, those were before the government and they were looked at. Yes. And what was found is this doesn't change anything because the issue here isn't were you ever sick while you were in the service? The question is, did you have this gastric condition? Is there a basis for a service connection for this gastric condition? So that when much later he presented his private doctor plus this new medical examination, we did reopen and we said, OK, you've made the connection. But the question... With the benefit of the sick reports. No, respectfully, Your Honor. Again, the finding is it's undisputed that the sick reports were not the basis for reopening. And not only is there that factual finding, but we know that because when the sick reports were presented on the second request, it was determined they didn't help. They didn't show this this service connection. Well, this is a matter, of course, of weighing the evidence. But it does seem that with the fire destroying all the original records, which might very well have shown the hospitalization that he claimed, not just some thereafter, it's as if it seems that there was no corroborating evidence of his doctor's opinion because the fire destroyed the records. I think I think it is fair that it's possible that the records that were destroyed in the fire might have supported him. It's possible. Aren't we supposed to draw inferences of possibilities when they're reasonable in favor of the veteran? Well, Your Honor, that would be a claim for Q based on the very first examination. And that is that argument is not something Mr. Brown has presented, certainly not presenting. You're saying that can't be considered on the reopening. I would think if he wanted to make that argument, he would need to reopen a certain queue on that. He asked that all the evidence be reconsidered. He now had the additional evidence of confirmation that he had been sick. But it was never disputed that he was sick. The that was not the basis for denying service connection in the first instance. If Grant, Your Honor, if that had been the basis, if I said there aren't any records of sickness, I never accepted that he had been sick. But had he come forward on that first review with the evidence that he ultimately came forward with, which is a doctor who said, oh, yes, I've treated him for this in 1962, which is what he ultimately came forward for. Presumably he would have gotten the same result he got on his fourth review. He didn't. That was the evidence he needed. These sick records. The reason these sick records aren't material is they don't show what he's trying to show a service connection that he had this condition at the time. They're also at this point, frankly, not new. And that goes to the Blubaugh decision where a veteran brought forward records. They were considered. They didn't help achieve service connection. And then he brought them forward again. And the court here said, Federal Circuit said, those aren't new records. What about the change in law? What effect does that have on this case? Your Honor, we think it doesn't affect the outcome here in Blubaugh. The new version of the regulation is, if anything, more favorable to veterans. But in Blubaugh, the court looked at it and said, yes, the wording has changed, but the intent, frankly, has not changed. It's the same intent as the old regulation, which is if there is new and material evidence, we go all the way back. So it's still the same point. The older version of the regulation has that exact language. And it specifically defines new as evidence. New evidence means existing evidence not previously submitted to agency decision makers. So we think very clearly under the older version of the regulation. Well, the new C doesn't contain the language new and material evidence, does it? But the A, which precedes it, does say new and material evidence. But then C says notwithstanding any other section. So is NME part of the new C? I believe the Blubaugh decision says it is. That the intention here was always to keep that. That the reason for the change was because, for whatever reason, some people had been reading new and material to mean you don't go back. You can't even consider going back to the original date. So that was the intention, and that's what this court in Blubaugh said. The other issue here, of course, is the outcome would have to manifestly change. And in order to get that earlier relation date under the old regulation, Mr. Brown would have to show that the records clearly support the earliest date. And we don't think he can show that. He hasn't raised an argument for why he can show that. And the Veterans Court pointed that out to him as well. His argument is the fact of a review is a manifest change. And that, frankly, is not the law. That's not been the way this court has ever interpreted manifestly change. Isn't the 19 years that he went without receiving disability benefits, wouldn't that constitute a manifest change? If he raised an argument before you, Your Honor, on why these sick reports clearly support the earlier date, but he hasn't even raised the argument. And the Veterans Court particularly called that point out to him. He didn't raise an argument there either. He's just said, well, the fact that I get a review, even if I get the same ultimate result, even though I'm not giving an argument why I get the same substantive result, is a manifest change. And that is not the law. Certainly, going back to the earlier date would be a substantive change, but that's not the argument he's making. He's saying the fact of consideration alone, regardless of outcome, is enough. And that is not how manifest change has been considered. For all those reasons, Your Honors, because the evidence he presents isn't new and material, and he doesn't even advance a legitimate argument for a manifest change, we would ask the decision below be affirmed. Thank you, Mr. Lyons. Mr. Carpenter. May it please the Court, I believe that the government is mistaken in its characterization of the new law. It is, more importantly, mistaken in its description of the Secretary's description of his interpretation of the meaning of the amendment to 3.156. Well, how can it not include NME? It's got to be new and material, right? No, Your Honor. It is new and material. I mean, you can come in with the same evidence, and as long as you argue that it's relevant, you've got a new ground? Yes, Your Honor. That's what 3.156c says, and that's what the Secretary himself explained. Is that what we said in Blubaugh? in the context of when it is not afforded, and in this case, it was not afforded. The change here that the Secretary made was to expressly remove from the regulatory language the phrase new and material, because he himself described that phrase as confusing and misleading. But they made it clear that the intent would remain the same. Yes, the intent to correct the prior administrative error, the intent that it be an exception to finality. That intent remains the same. The understanding that was described in Blubaugh is different than the context in which this case is presented, because this case is presented first in the context of Hughes. I guess I was speaking about the intent that any new evidence presented at a later date must be, in fact, new, not something that's been considered before by the Board or by the process. There is nothing in the regulation that says that, which is important. But more importantly, it's not a question of whether it's ever been considered. The question is whether it was considered properly as required by 3.156C. But that's what we said in Blubaugh, right? I mean, I think your case is going to stand or fall on Blubaugh. No, Your Honor, I don't think so. I think that Blubaugh both supports this argument and to some extent undermines it. But in Blubaugh, this Court was not asked to interpret the meaning of 3.156C in the context of whether or not there was or wasn't previous consideration of the service records. These service records, we cannot dispute, were received and were considered in a confirmed decision. The question at law here is, is the confirmed decision that was afforded Mr. Brown in 1978 the type of decision that is contemplated under 3.156C? The type of decision that is contemplated under 3.156C is a do-over. You begin again. You erase what happened. You erase the finality of the 74 rating decision. You erase the finality of the board decision in 1974, and you start anew. You reconsider the 1974 claim anew. That didn't happen in 1978, and most importantly, it didn't happen in 2002. And 2002 demonstrates why the change in law is necessary to understand because the change in law that changed or amended 3.156C removed the new and material requirement. The panel in Blubaugh did not recognize the secretary's interpretation when he amended that regulation and used the phrase new and material when that phrase was in fact removed from the regulation. I see that I'm into my... Any questions for Mr. Carpenter? Any more questions? Thank you very much. Thank you. Thank you both. The case is taken under submission.